```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF PUERTO RICO
```

LOUCIL-RIVERA, *et al.*,

   **Plaintiffs**

        v.

HOSPITAL METROPOLITANO DR. SUSONI,

   **Defendant.**

**CIVIL NO.** 10-1075 (JAG)

**OPINION & ORDER**

Garcia-Gregory, D.J.

On April 4, 2011, Hospital Metropolitano Dr. Susoni, Inc. ("Defendant") filed its Motion for Summary Judgment. (Docket No. 17). The Court referred this motion to Magistrate Judge McGiverin, who then issued a Report and Recommendation (the "Report") on the matter. (Docket No. 53). The parties filed their respective objections. (Docket Nos. 54, 55). For the reasons that follow, the Court **ADOPTS** the Magistrate Judge's recommendations and accordingly **GRANTS IN PART** Defendant's Motion for Summary Judgment.

## BACKGROUND[1]

<u>The Hospital's Employment Practices</u>

Between 2008 and 2010, the Hospital employed approximately 480 employees, consisting of 367 women and 113 men; by March 2011, there were 370 women and 109 men. (Docket No. 27, hereinafter "Def. St.," ¶¶ 1-2, 6). The Hospital gave maternity leave to thirteen employees in 2008, thirteen in 2009, and ten in 2010; by March 2011, three employees had taken maternity leave, and four were pregnant. (Def. St., ¶¶ 3-5, 7). The Hospital's statistics do not include independent contractors. (Def. St., ¶ 9). With the exception of Ildaliz Loucil, no employees during this timeframe complained of sex or pregnancy discrimination. (Def. St., ¶ 11). The Hospital did not provide paid leave to any "female professional who render[s] services to the Hospital on a per diem basis who has been pregnant," either before or after giving birth. (Def. St., ¶ 45).

Under the Hospital's collective bargaining agreement, all employee sonographers must be members of the Nurses and Health Employees Labor Unit ("the Union"). (Def. St., ¶ 13). However, sonographers providing services under a professional-services contract were not Union members. (Def. St., ¶ 14). Loucil was never a Union member, and never paid its dues or fees. (Def.

---

[1] This section is taken from the Magistrate Judge's Report and Recommendation.

St., ¶ 15). The Hospital has an antidiscrimination policy in its employee handbook, which Rodríguez calls "well-established." (Def. St., ¶ 93). Loucil became knowledgeable about the Hospital's sexual harassment policies and procedures as time went on working at the Hospital. (Def. St., ¶ 94).

Loucil's Relationship with the Hospital

In a document dated November 27, 2002 ("the 2002 contract"), Loucil agreed to provide sonographer services to the Hospital. (Def. St., ¶ 16). The 2002 contract specified fixed fees to be paid Loucil for each shift: $60 for 7:00 a.m. to 3:00 p.m., $70 for 3:00 p.m. to 11:00 p.m., and $80 for 11:00 p.m. to 7:00 a.m.. (Def. St., ¶¶ 17-19). It stipulated that she was not considered an employee, that there were no other agreements between the parties, and that she was not entitled to minimum hours, vacation, leave, or fringe benefits. (Def. St., ¶¶ 23-25). A document dated March 8, 2003 ("the 2003 contract") changed the fee per shift to $103.84 for the "7:00-3:00 shift" and the "3:00-11:00 shift (Saturdays and Sundays)." (Def. St., ¶¶ 26-27). The 2002 and 2003 contracts were otherwise identically worded. (Def. St., ¶¶ 29-31). Loucil stated that she and Omar Pérez, the Hospital's Director of Human Resources, agreed that her contracts would have a duration of one year, and that she would be converted to "regular employee" status beginning March 8, 2004. (Docket No. 32-1, hereinafter "Pl.

St.," ¶ 12). Loucil had payroll deductions for Social Security, Medicare, unemployment benefits, and income tax while she was working for the Hospital. (Id., ¶ 12). Loucil received unemployment benefits from the Department of Labor following her termination. (Id.). She received an employee manual from the Hospital, and took courses and maintained certifications as prescribed by the Hospital. (Id.). Loucil generally worked around 40 hours per week. (Id.).

A document dated February 3, 2009 ("the 2009 amendment") purports to amend the 2003 contract by setting Loucil's fee at $130 per shift, reciting that it is "a complete and exclusive statement" of the contract amendment. (Def. St., ¶¶ 65-67). The preamble recites that it is modifying the March 8, 2003 contract, that Loucil requested the increase in fees, and that the Hospital agreed. (Docket No. 31-7, p. 1). Loucil testified that she requested no contract amendments, and only signed the document because she was told she could not return to work or receive a pay increase until she signed it. (Pl. St., ¶ 65).

According to Rodríguez's statement, Loucil usually worked a 7:00 a.m. to 3:00 p.m. shift on Saturdays, and was "on call" from 3:00 p.m. to 11:00 p.m. on Saturdays and from 7:00 a.m. to 11:00 p.m. on Sundays. (Def. St., ¶ 28). Other sonographers were rarely scheduled to work during Loucil's Saturday and Sunday shifts. (Def. St., ¶ 32). The hospital could not assign Loucil's

tasks or duties to anyone else, as there were not usually other people available. (Def. St., ¶ 33). Rodríguez stated that Loucil "indicated on several occasions" that she was not able to become a full-time employee because of her need to care for her child; however, Loucil denies this in her statement. (See Docket No. 27-1, ¶ 22; Docket No. 32-2, ¶ 22).

The Hospital would contact Loucil to see if she was available for shifts that a regularly scheduled employee could not cover. (Def. St., ¶ 22). Blanca Rodríguez, the Hospital's present Director of Human Resources, stated that Loucil was responsible for finding a technician to cover any shifts she had to miss; Loucil denied this in her statement, however. (See Docket No. 27-1, ¶¶ 17-18; Docket No. 32-2, ¶¶ 15-16). Loucil was never evaluated by the Hospital. (Def. St., ¶¶ 49, 57). Rodríguez and Melissa Oliveras, the Imaging Center Supervisor, both stated this was because she was not an employee. (Def. St., ¶ 57).

Loucil's Pregnancies

Loucil became pregnant with her first child in late 2005. (Def. St., ¶ 34). As a result, Loucil stopped working at the Hospital between June 2006 and August 2006. (Def. St., ¶ 35). Loucil did not receive any pay during her absence. (Def. St., ¶ 36). Loucil had a good relationship with her Hospital coworkers and with one of her supervisors, Carmen Vargas. (Def. St., ¶

37). Loucil made no written complaints about her treatment during her first pregnancy. (Def. St., ¶ 38). She was treated normally throughout the first pregnancy, and nothing changed when she returned to work. (Def. St., ¶ 39). However, Loucil stated that the Hospital's ownership and administration consisted of different personnel during this time. (Docket No. 32-2, ¶ 21).

Loucil became pregnant again in 2008. (Def. St., ¶ 41). She informed Oliveras of this fact when she became aware of it in March 2008. (Pl. St., ¶ 108). She did not stop working during most of her pregnancy, and her last shift was on December 14, 2008. (Def. St., ¶¶ 42-43). Both Rodríguez and Oliveras stated that Loucil never demanded pay for the time she was not working because of her pregnancy. (Docket No. 27-1, ¶ 24; Docket No. 27-7, ¶ 5). However, Loucil denies this in her statement. (Docket No. 32-2, ¶ 25). Loucil returned to work on February 21, 2009. (Def. St., ¶ 47). Loucil testified that she asked not to be scheduled "from 3:00 to 11:00" for her first month back. (Def. St., ¶ 69). However, Loucil did not tell the Hospital she would be unavailable for that shift. (Docket No. 32-2, ¶ 43). Loucil does not know precisely how many shifts she worked prior to her pregnancy. (Def. St., ¶ 50). Although she thought she got fewer shifts because of her pregnancy, and that those shifts were given to other, less experienced persons, she did not know the

true reason for the reduction. (Def. St., ¶¶ 51-52; Docket No. 32-3, p. 22-23). Loucil testified that there was a raise given to all other sonogram employees in November 2008, none of whom were pregnant, but she did not receive it. (Pl. St., ¶ 48).

Loucil cannot identify any written record of a negative comment against her, and she was never evaluated by the Hospital. (Def. St., ¶ 49). She testified that there were no witnesses to the comments made against her. (Def. St., ¶¶ 53, 92). Loucil also never filed a formal written complaint with the Hospital regarding her treatment. (Def. St., ¶ 55). Rodríguez stated that Loucil did not complain verbally, either; however, Loucil testified that she made verbal complaints to Rodríguez in November 2008. (Def. St., ¶ 55; Pl. St., ¶ 55). Oliveras stated that she did not usually supervise Loucil or interact with her unless Loucil was working a weekday shift. (Def. St., ¶ 58). Oliveras supervised other employees and contractors who had been pregnant while working at the Hospital, and never received any other complaints regarding her treatment of them while they were pregnant. (Def. St., ¶¶ 63-64). Oliveras and Rodríguez stated that Oliveras was not Loucil's direct supervisor because she was not usually on duty during Loucil's shifts. (Def. St., ¶ 59). The General Supervisor was the only person responsible during weekends, and only verified that sonograms were performed. (Def. St., ¶ 56). However, Loucil stated that Oliveras was her direct

supervisor "at all times," and that Oliveras supervised her during the weekdays and on weekends. (Pl. St., ¶¶ 58–59). Loucil stated that Oliveras "constantly made . . . discriminatory comments to me and . . . constantly, negatively criticized my performance." (Docket No. 32-2, ¶ 38). In her deposition, Loucil testified that after announcing her pregnancy, Oliveras would say "that I was slow, that I had to hurry up, that my belly was not allowing me to work, that, 'You came there to work, to produce.' Every time that she would see me, she would comment that I was slow … ." (Docket No. 32-3, p. 17). She also testified that her supervisor treated her as if she were handling fewer patients than before. (Id. at 19). However, Oliveras stated that she had a good relationship with Loucil, never made any derogatory comments or remarks, and never called Loucil fat or said she was working slowly because of her pregnancy. (Def. St., ¶¶ 60-62).

Loucil has not received treatment for any mental or emotional condition, and has not had any disease, illness, or condition in the last ten years. (Def. St., ¶¶ 105-106).

Hilmari Loucil's Sonogram

On March 18, 2009, Loucil's sister, Hilmari Loucil ("Hilmari"), was taken to the emergency room at the Hospital. (Def. St., ¶ 70). Dr. Wanda Nieves, a physician at the Hospital, stated that while she was attending to Hilmari and was about to

re-evaluate her, Hilmari told her Loucil had performed a sonogram revealing "contradictory" results. (Def. St., ¶ 72). Nieves noted this in her on-duty notes, and stated that she did not order Loucil to perform the sonogram, that Loucil did not notify her or anyone in the Hospital of the sonogram, and that Loucil did not wait for her evaluation before conducting the sonogram. (Def. St., ¶ 73-74). Loucil stated that she volunteered to perform the sonogram because there was nobody available at the hospital to perform the study, and that Nieves authorized the sonogram. (Docket No. 32-2, ¶¶ 45, 47-48). Hilmari also testified that Nieves authorized the sonogram. (Docket No. 27-16, p. 4). There was no written authorization from any doctor for the sonogram, and none was evident on Hilmari's medical record. (Def. St., ¶ 74-75, 79). Nieves stated that verbal orders to perform a study must be followed by a doctor's written order, which are transcribed into the patient's record by a registered nurse. (Def. St., ¶¶ 77-78). However, Loucil stated that "on numerous occasions" she witnessed doctors giving verbal orders to perform studies which were not followed by written orders or disciplinary action. (Docket No. 32-2, ¶ 50).

Nieves stated that Loucil's conduct violated Hospital policies and procedures, and that she filed a written complaint against Loucil. (Def. St., ¶¶ 71, 80). Loucil was not aware of

any complaints made by Nieves on March 18, 2009. (Docket No. 32-2, ¶ 44). Additionally, Loucil stated she never received any rules or regulations from the Hospital regarding whether an order must be contained in the medical record, or whether she could be subject to discipline. (Docket No. 32-2, ¶ 51). An incident report signed by Carmen Cordero describes Nieves's complaint. (Def. St., ¶ 81).

Rodríguez stated that the Hospital terminated Loucil's contract because, after investigating the incident, it determined that Loucil willfully violated procedures and policies. (Def. St., ¶ 82). Loucil stated that neither she nor Hilmari were ever interviewed by the Hospital, and that she related her version of the facts to Rodríguez and Sandra Mena. (Pl. St., ¶ 81). Loucil testified that she was told the reason for her dismissal was violation of hospital norms on that day. (Def. St., ¶ 84). According to Rodríguez's statement, Loucil's sex, gender, or pregnancy were not factors in the decision to terminate Loucil. (Def. St., ¶ 85). Prior to March 18, 2009, Loucil's performance was satisfactory; she had not been the subject of any complaints, and Oliveras stated that she "never had to question" Loucil's performance. (Def. St., ¶¶ 102-104).

Procedural History

Loucil filed an EEOC charge on April 21, 2009. (Def. St., ¶ 86). She made a written request for information about her

termination on April 23, 2009. (Def. St., ¶ 87). Loucil testified that she wrote the request according to the precise wording provided by Rodríguez's secretary, so that she could get unemployment benefits. (Pl. St., ¶ 87). The Hospital responded with a letter stating that her contract was "annulled" as of April 3, 2009. (Def. St., ¶ 88). The EEOC dismissed Loucil's charge on November 4, 2009. (Def. St., ¶ 89). The EEOC did not interview Loucil or request evidence from her. (Pl. St., ¶ 89). Loucil sued on February 2, 2010. (Docket No. 1).

**STANDARD OF REVIEW**

A court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that

would warrant the court's denial of the motion for summary judgment.

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## DISCUSSION

Discrimination[2]

To make out their *prima facie* case of pregnancy discrimination, Plaintiffs must show that: 1) Loucil was

---

[2] The Magistrate Judge provided a clear and concise statement of the law. The Court will thus only provide the necessary background where applicable.

pregnant or had indicated an intention to become pregnant; 2) her job performance was satisfactory; 3) the Hospital nonetheless took an adverse employment action against her because of her pregnancy; and 4) her duties continued to be performed by a comparably qualified individual. Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 421 (1st Cir. 1996).

The Hospital focuses its arguments on the third prong of the pregnancy discrimination test. Plaintiffs alleged that Loucil suffered five distinct adverse actions at the hands of the Hospital: 1) a reduction in her compensation and work hours; 2) the Hospital's failure to give Loucil a raise along with other employees; 3) the Hospital's refusal to pay maternity leave; 4) that the Hospital coerced Loucil into signing a contract amendment; and 5) Loucil's termination. (Docket No. 32, p. 8-10). The Court will now examine the Hospital's objections to the Magistrate Judge's findings on its motion for summary judgment.[3]

---

[3] Plaintiffs filed a timely motion objecting to the Magistrate Judge's Report and Recommendation. Unfortunately, given its lack of organization, the Court found Plaintiffs' motion difficult to follow. Even worse, Plaintiffs apparently forgot to support their arguments with citations to case law or statutes. The Court will not perform this work for Plaintiffs. Moreover, it appears that some of the arguments being presented by Plaintiffs in their objections were never made before the Magistrate Judge. "Just as parties cannot present arguments to the appellate court that they did not raise before to the district court, parties must take before the magistrate, not only their best shot but

a. <u>Reduction in Hours</u>

Plaintiffs stated that the Hospital's reduction of Loucil's work hours was due to pregnancy discrimination. The Magistrate Judge correctly considered this statement a legal conclusion and did not afford it the presumption of truth. Defendants latch on to this finding and argue that this was not enough to create a genuine issue of fact on whether the Hospital took an adverse action against Loucil by reducing her hours and compensation.

The Hospital's argument falters because the Magistrate Judge relied on more than this statement to arrive at his conclusion: Loucil stated quite clearly in both her deposition and in her statement under penalty of perjury that the hospital had reduced her work hours from forty to thirty per week. (Docket No. 53, p. 12; Docket No. 32-2, ¶ 29). Though this statement may very well be self-serving, the Court finds it

---

all of their shots." <u>Ridenour v. Boehringer Ingelheim Pharmaceuticals, Inc.</u>, 679 F.3d 1062 (8th Cir. 2012). Insofar as they are potentially new, or insufficiently briefed, these arguments will be deemed waived. <u>See</u> <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990)("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); <u>see also</u> <u>Malave v. Carney Hosp.</u>, 170 F.3d 217, 222 (1st Cir. 1999)(noting the "bedrock rule of appellate practice that [...] matters not raised in the trial court cannot be hawked for the first time on appeal"). In spite of the above, however, the Court still reviewed Plaintiffs' objections and found no reason to reject the Magistrate Judge's recommendations.

sufficient to raise a genuine dispute regarding whether the Hospital reduced Loucil's work hours. This conclusion is bolstered by the fact that the Hospital did not point to any evidence showing that Loucil's work hours remained the same. Neither did the Hospital attempt to articulate a non-discriminatory reason for the reduction in work hours, assuming the reduction occurred. Accordingly, the Hospital's Motion for Summary Judgment is denied on this point.

  b. Disparate Treatment in Compensation

Plaintiffs aver that at some point in 2008, the Hospital held a meeting in which a "salary increase" was given to "all sonogram employees." (Docket No. 32-3, p. 23, l. 17-18). Though Loucil was present at that meeting, she was not given the raise. (Id., p. 24, l. 7-9).

The Hospital argues that the above is not enough to survive summary judgment, especially since there is no evidence -other than Loucil's testimony- showing that the sonographers actually received the salary increase. Rather, the Hospital points out that though Loucil was present when the salary increase was announced, she testified in her deposition that she does not actually know "when any 'other' sonographer received the increase and only [offered] inadmissible hearsay testimony that Hospital employees told Loucil that they had received the

increase." (Docket No. 54, p. 9). Thus, the Hospital categorizes Loucil's statements as "conclusory" and insufficient to withstand summary judgment. (Docket No. 54, p. 9).

The Hospital's argument may have some merit. However, the fact that the Hospital chose to focus on Loucil's statements, rather than proffering evidence of its own, gives the Court some pause. It would be easy enough for the Hospital to peruse the records of the employees who were at the meeting (which were specifically singled out by Loucil) and show that they did not receive any salary increase. But no such records have been disclosed. Further, the Hospital argues that by signing the contract amendment in 2009, which increased her *per diem* rate, Loucil was "put in the same position as the 'other sonographers.'" (Docket No. 54, p. 10). If this is true, then it is also true that the "other sonographers" received a pay increase prior to 2009, while Loucil -the only pregnant one among them- did not.

Against this vague factual background, which hints slightly at discriminatory treatment on the part of the Hospital, the Court finds a triable issue of fact. This matter is best left to a jury, which shall weigh the evidence and decide whether the other employees actually received that increase, and whether this action was tinged with discrimination on account of

Loucil's pregnancy. Therefore, the Hospital's Motion for Summary Judgment on this claim is denied.

Retaliation

The Magistrate Judge found that Plaintiffs had "tenuously" established a prima facie case of retaliation for the Hospital's alleged failure to raise her compensation. To the extent that the Hospital objects to this conclusion on the same grounds as it did with Plaintiffs' discrimination claim, the Hospital's Motion for Summary Judgment is denied. Simply put, a triable issue remains on whether the Hospital declined to increase Loucil's salary in lockstep with other sonogram employees.

The Hospital also argues that the Magistrate Judge's factual findings are inconsistent with his holding that Plaintiffs met the causal element of the retaliation test. This argument fails as well. Unlike the other alleged adverse employment actions, Loucil's complaints and the Hospital's withholding of the salary increase both occurred in November 2008. This strong temporal proximity is enough to raise, by itself and along with the other reasons mentioned by the Magistrate Judge, an inference of retaliation. See Sanchez-Rodriguez v. AT & T Mobility Puerto Rico, Inc., 673 F.3d 1, 15 (1st Cir. 2012); Calero-Cerezo v. U.S. Dep't. of Justice, 355

F.3d 6, 25 (1st Cir. 2004) (citing <u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74 (2001)).

<u>Supplemental Jurisdiction</u>

Finding that some Title VII claims remained, the Magistrate Judge declined to grant summary judgment to the Hospital on Plaintiffs' state law claims. We find no reason to hold otherwise. The Hospital's motion for summary judgment on this ground is hereby denied.

**CONCLUSION**

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's recommendations in their entirety. Accordingly, the Hospital's Motion for Summary Judgment is **GRANTED IN PART**. Plaintiffs' claims of discrimination and retaliation based on the Hospital's refusal to extend maternity leave, the modification of her employment contract, the alleged hostile work environment and her termination are hereby **DISMISSED WITH PREJUDICE**. Remaining for trial are Plaintiffs' (1) discrimination claims of reduced hours, compensation and failure to give a raise; their (2) retaliation claim of failure to give a raise; and (3) the claims under Puerto Rico law. Judgment shall be entered accordingly.

IT IS SO ORDERED.

    In San Juan, Puerto Rico, this 29th day of August, 2012.

                                              <u>S/ Jay A. Garcia-Gregory</u>
                                                JAY A. GARCIA-GREGORY
                                        United States District Judge